(No. 12780.—Reversed and remanded.)
THE TRI-CITY ARTIFICIAL ICE COMPANY *et al.* Defendants
in Error, *vs.* JOHN DAY, Plaintiff in Error.

*Opinion filed April 21, 1920.*

1. PLATS—*statutory plat vests fee of streets and alleys in city.*
A statutory plat which has been accepted by a city vests the fee of
its streets and alleys in the city.

2. SAME—*when entire plat is vacated.* The vacation of a plat,
which is expressly declared to be according to section 6 of the Plats
act, vacates the entire plat, including the streets and alleys, and the
owner cannot make any exceptions, but if he desires to vacate only
a part of a plat he must proceed under section 7 of the statute.

3. SAME—*vacation of an entire plat re-invests streets in original
owner.* The vacation of an entire plat by the owner of the addi-
tion, to whom it has been conveyed after it was platted, re-invests
the fee of the streets and alleys in the original owner who made
the plat, even though the city has accepted said streets and alleys.

4. DEEDS—*when the grantor's after-acquired title vests in subse-
quent grantees.* Where one of two original owners who have plat-
ted an addition dies and the platted addition is conveyed by his
devisee and the other maker of the plat by warranty deed to a party
who subsequently vacates the entire plat, the warranty of title in
said deed, in order to avoid circuity of action, operates to vest in
subsequent grantees the undivided one-half interest in the fee in
a street which was re-invested in the living maker of the plat by
the vacation while the other undivided one-half is in the heirs of
the deceased maker of the plat. (*Smiley* v. *Fries,* 104 Ill. 416, ex-
plained.)

5. SAME—*effect where plat is vacated after maker's devisee has
sold the platted tract.* Where a statutory plat is vacated, under sec-
tion 6 of the act concerning plats, after the platted tract has been
sold by the devisee of the maker of the plat, the title to the vacated
streets and alleys does not pass as after-acquired title under the
devisee's deed but goes to heirs of the deceased maker of the plat.

6. HIGHWAYS—*what necessary to establish highway by prescrip-
tion.* To establish a highway by prescription the user must be ad-
verse, open and notorious, exclusive, continuous and uninterrupted
for the period required by the statute.

WRIT OF ERROR to the Circuit Court of Rock Island
county; the Hon. FRANK D. RAMSAY, Judge, presiding.

292—35

P. R. INGELSON, and H. A. WELD, for plaintiff in error.

GEORGE W. WOOD, and J. D. METZGAR, for defendants in error.

Mr. JUSTICE DUNCAN delivered the opinion of the court:

Defendants in error, the Tri-City Artificial Ice Company and the Bennett Organ Company, jointly filed a bill in the circuit court of Rock Island county November 30, 1918, praying for a temporary and permanent injunction against plaintiff in error, John Day, to restrain him from interfering with and closing a strip of land 23 feet wide along the east side of Shallberg & Tropp's addition to the city of Rock Island and from removing the poles and electric wires used in running the machinery of the ice company. A temporary injunction was awarded. Plaintiff in error filed his answer claiming ownership of said strip of land, to which a replication was filed. On a hearing had in open court a decree was rendered in favor of defendants in error, granting a permanent injunction as prayed.

No certificate of evidence was filed, and the question in this case is whether or not the finding of facts incorporated in the decree supports it. The facts found by the court and recited by the decree are the following: On July 5, 1890, Andrew Shallberg and Swan Tropp obtained title to a tract of land described as all of out-lot 1 in Sinnett's addition which lies north of Third avenue and between the center line of Forty-third street projected north to Sylvan Waters and the center line of Sinnett street (Forty-fourth street) projected north to Sylvan Waters. On August 6, 1892, they filed for record in the recorder's office of Rock Island county a plat duly certified by a surveyor and acknowledged by them as owners, and entitled it "Shallberg & Tropp's First addition to the city of Rock Island." This plat consists of six lots, numbered from 1 to 6 inclusive, which are 124 feet long north and south, No. 1 being the east lot and border-

ing on Forty-fourth street and No. 6 being the west lot and bordering on Forty-third street. The plat has a 16-foot alley on the north between said lots and the property not platted. The lots are bordered on the south by Third avenue, 60 feet wide. Forty-fourth street contains 26 feet of the owners' land that is platted in this plat. The plat was approved by the city authorities. The city council afterwards laid a sewer seven feet east of the east line of Forty-fourth street and north of Third avenue, and a special assessment was spread against lot 1 in said addition for its part of the cost of the sewer. Shallberg died in 1897. He devised to his wife, Johanna S. Shallberg, his undivided interest in all the premises conveyed to him and Tropp and by the same description that they obtained it, including the land platted as aforesaid. On July 5, 1901, Tropp and Johanna S. Shallberg conveyed by warranty deed to the Tri-City Bottled Milk and Butter Company all the lands conveyed to Shallberg and Tropp, including said addition. The Tri-City Bottled Milk and Butter Company erected a factory building on lot 1 of said addition, the east line of which was about two feet west of the west line of Forty-fourth street. On June 26, 1902, that company filed for record a deed of vacation in the words and figures following:

"Know all men by these presents, that the Tri-City Bottled Milk and Butter Company, of the city and county of Rock Island and State of Illinois, the owner of Shallberg & Tropp's addition to the city of Rock Island, and being the owner of said premises, and in pursuance of the power vested in said company as such owner by section 6, chapter 109, of the Revised Statutes of the State of Illinois, the said Tri-City Bottled Milk and Butter Company does hereby vacate said entire addition, including Forty-third street and the alley platted as part of said addition, and said Tri-City Bottled Milk and Butter Company hereby asks that said plat be canceled of record in pursuance of the statute above mentioned."

This vacation piece was properly signed and sealed by the president and secretary of said company and was acknowledged before a notary public. On November 10, 1902, the Tri-City Bottled Milk and Butter Company executed and delivered to the Tri-City Pasteurized Milk Company a warranty deed to all of the land and by the same description contained in the deed to Shallberg and Tropp. These two companies had a coal-bin located in the northeast corner of their building and used Forty-fourth street for the purpose of hauling coal and for other street purposes from the erection of the building until March 3, 1910, when the Tri-City Pasteurized Milk Company executed and delivered to plaintiff in error, John Day, a warranty deed containing the same description of land as in the deed of Shallberg and Tropp. Plaintiff in error rented the premises to the Sylvan Ice Company, and it used the premises so conveyed for ice house and storage purposes until June 29, 1914, when plaintiff in error executed and delivered to the Tri-City Artificial Ice Company a deed to a tract of land, describing it by metes and bounds, which is 91.2 feet wide east and west with a 260.26-foot line on the west and a 292-foot line on the east, which property extends into Forty-fourth street three feet as the street was platted. Said property is bounded on the south by Third avenue. This deed includes lots 1 and 2, a part of lot 3, that part of the alley immediately north of the same and the west three feet of Forty-fourth street as platted by Shallberg and Tropp, as aforesaid, which leaves only the east 23 feet of Forty-fourth street so platted by them. The grantee in this last deed took possession of the premises so conveyed and used the building thereon as a factory in which to manufacture artificial ice, and it erected on the east side of the building a loading platform which extended 4½ feet into Forty-fourth street and an ice-slide which extended three feet into said street, and it continued to so use the same until the beginning of this suit, for hauling ice and coal to its factory,

using a number of teams and trucks every day during said period. In 1903 the defendant in error the Bennett Organ Company purchased the property abutting on Forty-fourth street and on the east side of said street and erected an organ factory thereon, the west line of which was nine feet east of the east line of Forty-fourth street. The building extended from Third avenue north about 126 feet, and at the north end of the building it had attached a coal-shed that extended west into Forty-fourth street about two feet. Since 1903 until the commencement of this suit this company used Forty-fourth street continuously for the purpose of hauling coal to its factory and for other street purposes.

It is stated in the decree that Forty-fourth street has been used by the city of Rock Island from time to time for hauling cinders and other rubbish gathered from the alleys to a dumping ground north of Third avenue for at least ten years last past; that the city accepted Forty-fourth street as platted in Shallberg & Tropp's addition and that the title thereto vested in the city; that Forty-fourth street has never been vacated, and that the instrument vacating said plat excepted Forty-fourth street from the portion vacated; that the fee of said street is in the city of Rock Island, and that plaintiff in error has no right, title or interest in the street.

The court erred in finding from the evidence that the vacation deed excepted Forty-fourth street from the addition vacated and that the fee in that street is still vested in the city of Rock Island. Only the south part of the land owned by Shallberg and Tropp was platted by them into said addition, and they owned the addition and the land north of the alley when they platted the addition. The Tri-City Bottled Milk and Butter Company owned the lots in said addition and the land north of the alley when it filed the vacation piece and the city owned Forty-third and Forty-fourth streets and the alley in fee, as the plat was a statutory plat. (*Heppes Co.* v. *City of Chicago,* 260 Ill. 506.) The vacation piece especially purports to vacate "said entire

addition," and asks that "said plat be canceled of record" in pursuance of the power vested in the company, "as such owner," by section 6 of the statute, which is the section to be followed when the whole plat is vacated or canceled. By the use of the words in the vacation piece, "including Forty-third street and the alley platted as part of said addition," the owner in the vacation piece did not except Forty-fourth street. To so hold would be to nullify the actual intent therein expressed by the owner to vacate the entire addition. Had the owner intended to express an intent to except Forty-fourth street it would have been much easier for it to have said so in so many words, and it would have been the most natural way of making such exception. Had the owner used the language, "the entire addition, including lot 1," in place of the language in question, we do not apprehend that anyone would suppose that any other lot or street or the alley should be understood as excepted, even if there had only been two lots in the addition instead of six.

An owner, by virtue of section 6 of the statute aforesaid, has no control over the streets in his addition and is not empowered by that section to vacate all the lots and blocks in the addition and leave the streets, or any of them, still in existence, at his pleasure. If he desires to vacate only a part of the addition he must proceed under section 7 of the statute. When the owner proceeds, under section 6, to vacate all the lots and blocks of an addition owned by him, as has been done in this case, his vacation piece operates to destroy the force and effect of the recording of the plat so vacated and to divest all public rights in the streets, alleys and public grounds and all dedications laid out or described in such plat. This is the express provision of the statute, and this court has expressly held that the legislature meant exactly what is expressed in that section, and that not even the city, after it has accepted the plat, has any right or power to defeat that intent. (*Illinois Electric Co.* v. *Town of Cicero,* 282 Ill. 468.) The owner of the

addition has no power to defeat such intent after he has vacated all of the addition, under said section, owned by him. The Tri-City Bottled Milk and Butter Company only owned the lots and blocks in said addition when it vacated it and the city owned the streets and the alley, which were also vacated, as aforesaid. The vacation divested the city of its title to the two streets and the alley, which had the effect to re-invest the title to the streets and the alley in the original owners who platted the addition and not to vest the title thereto in the Tri-City Bottled Milk and Butter Company, which vacated the addition. That company could only claim title to the streets and the alley by virtue of the warranty deed made to it by Johanna Shallberg and Tropp, to which reference has already been made, as will now be shown.

The effect of the vacation of the addition, when alone considered, would have been to re-invest Shallberg and Tropp with the title to the streets and the alley vacated had Shallberg been living. Shallberg devised to his widow all his interest in the entire lands conveyed to him and Tropp, including the addition, and by a description that included the streets and the alley aforesaid. The effect of the vacation, then, was to vest the title of the streets and the alley in Tropp and in the heirs of Shallberg, as Shallberg's will took effect at his death and did not have the effect to pass title to the streets and the alley, which he did not then own. The warranty deed signed by Tropp purported to convey to the Tri-City Bottled Milk and Butter Company all of the addition and by a description that included the streets and the alley. Therefore, when Tropp was re-invested with the title to the undivided half interest by the vacation piece, his after-acquired title vested in his grantee by way of estoppel by reason of the warranty deed made by him to the grantee, and that interest is now vested in plaintiff in error by the subsequent deed made by Tropp's grantee and the other deeds connecting plaintiff in error with that grantee's

title, except the three-foot strip conveyed by him. (*Corbin v. Terminal Railroad Co.* 285 Ill. 439; *Smiley v. Fries,* 104 id. 416.) The other undivided half interest has passed to and vested in the heirs of Andrew Shallberg.

Counsel for defendants in error are under a misapprehension as to the effect of the decision in *Smiley v. Fries, supra.* The doctrine there laid down is that a warranty deed passes the after-acquired title of the grantor for the purpose of avoiding circuity of action, and that there can be no circuity of action where there is no liability on the covenants of warranty. In that case it was held that no title conveyed to Pensoneau by the warranty deed of Kraft, other than the title actually conveyed, could inure to the benefit of Pensoneau, because there could be no circuity of action. That was so because Kraft assumed to convey the full title to Pensoneau when Kraft only owned three-fourths of the title while Pensoneau owned the other fourth. Pensoneau could have no action at all against Kraft on his covenant of warranty, for the reason that the whole title was vested in Pensoneau when Kraft conveyed him his undivided three-fourths, as he owned the other undivided fourth in his own right. In the instant case there was a breach of his warranty when Tropp conveyed the streets, which he did not own at all, and to avoid circuity of action his after-acquired title vested in the grantee.

It is suggested by defendants in error that if Forty-fourth street was vacated by the filing of the vacation piece aforesaid, the street became a highway for street purposes by the fifteen years or more use of the same shown by the recitals of the decree. This case does not appear to have been tried upon that theory and was not decided upon that theory by the court, and the facts recited in the record are not sufficient to establish such a right or title by prescription. To establish a highway by prescription the user must be adverse, open and notorious, exclusive, continuous and

uninterrupted for the period required by the statute.   *Doss v. Bunyan,* 262 Ill. 101.

For the errors indicated the decree of the circuit court is reversed and the cause remanded.

*Reversed and remanded.*